Filed 9/6/24  P. v. Wilson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>REBECCA JUNE WILSON,<br><br>Defendant and Appellant. | C099100<br><br>(Super. Ct. Nos. CRF14-0000F73903, 14FF739) |

Defendant Rebecca June Wilson appeals from an order denying her Penal Code section 1172.6 petition.[1]  She contends there is insufficient evidence to support the trial court's conclusion that she could still be found guilty of murder under the current law. Finding no merit to her contention, we affirm.

---

[1]  Undesignated statutory references are to the Penal Code.

1

FACTS AND PROCEEDINGS

In 2014, the People charged defendant with (among other offenses) the murders of Tommy Burton and Michael Forsyth. (§ 187, subd. (a).) Defendant ultimately pleaded guilty to two counts of voluntary manslaughter (§ 192, subd. (a)), two counts of robbery (§ 212.5), two counts of residential burglary (§ 459), two counts of arson (§ 451, subd. (b)), two counts of assault with a firearm (§ 245, subd. (a)(2)), and being an accessory to murder after the fact (§ 32). Defendant also admitted to firearm use enhancements (§ 12022, subd. (a)(1)) and to robbery in concert (§ 213, subd. (a)(1)(A)).[2] The trial court sentenced defendant to 26 years eight months in prison.

In 2022, defendant petitioned for resentencing under what is now section 1172.6. The trial court issued an order to show cause and set the matter for an evidentiary hearing. Prior to the hearing, the parties stipulated to several facts and to the admission of: (1) excerpted transcripts of two statements defendant made to detectives; and (2) a transcript of defendant's testimony in the case of *People v. Byron Willis* (Case No. 14F0739).

According to this evidence, defendant met Forsyth at a property in Ingot, California, in May or June 2013. She planned a burglary or robbery of the property and specifically targeted Forsyth because she believed he was a child molester. Defendant told detectives "who would fuckin' do that to their own fuckin' kid. You know what I mean? Like, he doesn't deserve anything, you know?" Defendant also told detectives she knew Forsyth lived at the property but later testified she believed Forsyth only looked after the property but did not live there. On October 25, 2013, defendant brought her boyfriend Joshua McCormick and Eric Ratledge to the property to steal from it.

---

[2] As part of the same agreement, defendant pleaded guilty to offenses in three different cases, which are not relevant here.

2

Defendant's relationship with McCormick was abusive and he was extensively physically violent with her.

Defendant did not want to rob the property if somebody was there. She did not think anyone was there when they arrived because there was no car out front--though she knew it was possible someone would still be there. Defendant also claimed she did not know McCormick and Ratledge were armed with shotguns and brought zip ties. While she was driving on the property, defendant encountered McCormick with Forsyth tied up. Forsyth was peering through a blindfold. Defendant was concerned Forsyth would recognize her by voice or sight and told McCormick, "when he sees me, he's gonna know who I am. I came here with Jesse." Defendant told law enforcement that, at this point, she still did not know McCormick had a shotgun. But her testimony suggested McCormick was holding a shotgun when she discovered Forsyth tied up.

According to defendant, she asked McCormick if they could leave but McCormick said no. Defendant also claimed she told McCormick not to kill Forsyth. McCormick then told defendant to go to the trailer and steal the safe. When she returned, McCormick said Burton had arrived and McCormick had shot him. Defendant approached Burton; he was still alive, and he reached out to grab her. She went to find Ratledge and tell him what happened. She then heard a shot, which was McCormick shooting Forsyth in the head. The victims' bodies were taken inside separate structures on the property and those structures were set on fire. Defendant, McCormick, and Ratledge left in a truck with the stolen goods with defendant driving. Defendant claimed she was going to leave her accomplices behind because she was freaking out, but she could not get the truck started and backed up in time. After returning home, defendant helped her accomplices open the safe and dispose of it. She also used some of the coins taken from the property to "further [her] drug habit."

Afterwards, Byron Willis told McCormick and defendant that they should "get rid" of Ratledge because he was a witness. Defendant believed McCormick and Willis

3

had ultimately decided to just beat up Ratledge. She planned to warn Ratledge of the impending attack but never did. In early November 2013, Ratledge visited defendant and McCormick's home. Defendant left because she did not want to be there when Ratledge got beat up. When she returned, Willis told her he shot Ratledge twice, after which Ratledge said "I won't tell anybody, I promise" and ran out the back door. McCormick and Willis pursued Ratledge and, after catching him, McCormick shot Ratledge in the head, killing him. Defendant and McCormick used towels and bleach to clean up the blood and body tissue where Ratledge was shot. Defendant also went to the store to get more bleach and cleaning supplies. She and McCormick attempted to paint the walls.

In her testimony, defendant admitted to lying to detectives about several aspects of the crimes, including her involvement in Ratledge's death. She also admitted lying to detectives about never having been in the truck that was used for the robbery in Ingot.

At the evidentiary hearing, the trial court denied the petition, concluding that defendant could still be found guilty of the murders of Burton and Forsyth because she was a major participant in the underlying felonies and acted with reckless indifference to human life. Applying the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), the court explained:

"Here, the Petitioner had prior knowledge of the location of the first incident, having been there previously with someone else. She helped to plan the burglary. She was also aware of and had the same intent as the co-defendants to burglarize the residence and steal property prior to going to the location. [¶] Afterwards, she was aware of the plan to possibly kill or at least beat up Ratledge, who had been part of the initial incident.

"The second factor is what role the Defendant had in supplying or using lethal weapons. I think it's clear from the evidence that the Petitioner denied any prior knowledge that anyone was armed within that first incident.

4

"The third factor is what awareness the defendant had of any particular dangers posed by the nature of the crime, the weapons used, or past experience or conduct of the other participants.  Here, the Petitioner was aware that co-defendant McCormick was a violent person.  They had a physically abusive relationship.  However, by her testimony and the evidence I've read, she didn't expect there to be anyone at the residence.  And as to the Ratledge death, she knew that Willis initially said he wanted to kill him.

"The fourth factor[] was the Defendant present at the scene of the killings in a position to facilitate or prevent the actual murder?  And did his or her own actions or inaction play a particular role in the death?  [¶]  Here the Petitioner was at the scene along with McCormick and Ratledge.  Just prior to McCormick shooting a victim, the Petitioner said, 'When he sees me, he's going to know who I am.  I came here with Jessie['] . . . .  [¶]  McCormick then told her to go into the next room to find the safe, and immediately after that, she heard a gunshot.  McCormick afterward told her that he shot the victim.  Later on in the Ratledge death, she was present at the scene.

"The fifth element was what did the Defendant do after lethal force was used?  In that first incident, McCormick told her to move the truck, which she did.  She then rode in the truck back to their house where McCormick and Ratledge retrieved the contents from the safe.  She was also present again at the scene of Ratledge's death and helped clean up blood and tissue from the scene.  [¶]  In other words, this Court's theory is that by assisting in the cleanup of the Ratledge death scene, she was also helping to conceal evidence of the crimes committed in the original scene."

As to whether defendant acted with reckless indifference to human life, the court explained the factors it considered:

"Here, once again, the Defendant had no prior knowledge that weapons were going to be used or that anyone was harmed.  However, with regard to her proximity to the crime, she once again was at the scene of all killings.  [¶]  Her statement to McCormick that the victim would recognize her immediately preceded McCormick

5

killing the victim, and she was present immediately prior to [and] immediately after the Ratledge killing. [¶] Petitioner's relationship with the participants. Her involvement in the planning and her presence at the scene all provided her with many opportunities to prevent or mitigate the crimes. [¶] Petitioner was, once again, aware of McCormick's propensity for violence. She knew of Willis's stated intention to kill Ratledge. [¶] I don't find that there were any efforts along the way of Wilson to minimize the possibility of violence in the first incident. Petitioner did make an attempt to speak with Ratledge during the second incident to warn him about something but didn't do so. She then asked to leave the scene briefly because she 'didn't want to be there doing it'. She eventually left and came back after the killing had occurred and assisted with the cleanup."

In reaching its ultimate conclusion, the trial court stated: "Even if this Court were to separate the two incidents and not consider Petitioner's actions that relate to the Ratledge killing, the second killing, and focus solely on those actions related to the two killings in the first incident, I would find that the People have met their burden beyond a reasonable doubt that Petitioner was a major participant in the underlying crime and that she acted with reckless indifference to human life. [¶] I just feel that the additional actions of the Petitioner related to the Ratledge killing just further show the extent of her intimate – intimate involvement, her knowledge and her mental state."

Defendant timely appealed.

DISCUSSION

Defendant argues there was insufficient evidence for the trial court to find she was a major participant in the burglary and acted with reckless indifference to human life. We disagree.

A trial court's denial of a section 1172.6 petition is reviewed for substantial evidence. (*People v. Njoku* (2023) 95 Cal.App.5th 27, 41-43.) In applying this standard, we " ' " 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable,

credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt.' " [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' " (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480.) Reversal is not warranted unless " ' "upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Our Supreme Court has set out the elements required to establish a defendant was a major participant in a felony and acted with reckless indifference to human life. The former means a defendant's personal involvement must be "substantial" and greater than the actions of an ordinary aider and abettor to an ordinary felony murder. (*Banks*, *supra*, 61 Cal.4th at p. 802.) The ultimate question "is 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major." ' " (*People v. Clark* (2016) 63 Cal.4th 522, 611 (*Clark*).)

Our Supreme Court identified the following list of nonexclusive factors to consider when analyzing whether a defendant acted as a major participant: (1) " 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths?' "; (2) " 'What role did the defendant have in supplying or using lethal weapons?' "; (3) " 'What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?' "; (4) " 'Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?' "; and (5) " 'What did the defendant do after lethal force was

7

used?' " (*Clark*, *supra*, 63 Cal.4th at p. 611, quoting *Banks*, *supra*, 61 Cal.4th at p. 803.) It is not necessary that each factor be present, but the presence of no single factor is dispositive. Instead, "[a]ll may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Banks*, at p. 803.)

As for the mens rea requirement of reckless indifference to human life, our Supreme Court has explained that a defendant must be " ' "*subjectively* aware that his or her participation in the felony involved a grave risk of death." ' " (*Banks*, *supra*, 61 Cal.4th at p. 807.) The question is "whether a defendant has ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' [Citations.] The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Id*. at p. 801.) This requires more than the foreseeable risk of death inherent in any armed crime. (*Id*. at p. 808; see also *Clark*, *supra*, 63 Cal.4th at pp. 617-618 [participation in an armed robbery, alone, does not demonstrate reckless indifference to human life].) Instead, the defendant must consciously disregard a substantial and unjustifiable risk to human life. (*Clark*, at p. 617.) In addition to a subjective component, the reckless indifference element also encompasses an objective component; a reviewing court asks whether the defendant's behavior was a " 'gross deviation' " from what a law-abiding person would have done under the circumstances. (*Ibid*.)

Recognizing the overlap between the major participant and reckless indifference elements (*Clark*, *supra*, 63 Cal.4th at pp. 614-615), our high court has considered the following list of nonexclusive factors in determining whether a defendant acted with reckless indifference to human life: (1) a defendant's knowledge of weapons, and use and number of weapons; (2) a defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony;

(4) a defendant's knowledge of the cohort's likelihood of killing; and (5) a defendant's efforts to minimize the risks of the violence during the felony (*id*. at pp. 618-623). No one factor is required or dispositive. (*Id*. at p. 618.) We analyze the totality of the circumstances to determine whether defendant acted with reckless disregard to human life. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

Applying these factors here, substantial evidence supports the trial court's conclusion that defendant was a major participant in the burglary who acted with reckless indifference to human life.

Defendant planned the crime by targeting Forsyth and telling McCormick and Ratledge where to go. She was aware McCormick was violent and acknowledged it was possible someone would be at the property. Knowing McCormick's violent nature, defendant told him that Forsyth would be able to recognize her after seeing that McCormick had tied up and blindfolded Forsyth.[3] She was present at the scene when Forsyth and Burton were murdered and did not take any meaningful steps to stop the murders or aid the victims, even when Burton reached out to her. She drove McCormick and Ratledge away with the stolen property after the murders and used some of the stolen goods to fund her drug habit. She also helped cover up the crimes by helping to clean up Ratledge's murder and disposing of the safe. This evidence shows defendant was not merely a passive participant, but actively participated in the underlying felonies that led to the victims' deaths.

---

[3] Defendant takes issue with the trial court's finding that her "statement to McCormick that the victim would recognize her *immediately* preceded McCormick killing the victim" (italics added) because Forsyth was not the victim who most immediately followed defendant's statement. It is not clear from the record when Burton died, though he was shot before Forsyth. Regardless, the trial court's point--that McCormick killed Forsyth soon after defendant recklessly conveyed to him the perceived threat that Forsyth posed-- remains valid.

Regarding the reckless indifference to human life, the fact that defendant did not initially know McCormick and Ratledge were armed and brought zip ties weighs in her favor, as does the fact that she wanted to rob the property when no one was present.[4]  At the same time, defendant knew McCormick was violent.  Though defendant was present at the scene, she did not aid the victims or summon help--not even after she discovered Forsyth was tied up and McCormick was armed, or after McCormick shot Burton.  (See *Clark*, *supra*, 63 Cal.4th at p. 619 ["Proximity to the murder and the events leading up to it may be particularly significant where . . . the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force"].)  Indeed, instead of intervening, defendant left a defenseless Forsyth alone with McCormick after McCormick had just shot Burton.

Further, the trial court reasonably concluded that the statement that Forsyth could identify defendant was made with reckless indifference to Forsyth's life given McCormick's known propensity for violence and that Forsyth was defenseless.  Defendant argues the statement "was made with the intent to convince her accomplices to immediately end the burglary, not to effectuate a murder to conceal the burglary."  This contrary inference did not foreclose the trial court from making an alternate reasonable inference.  (See *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591 [explaining that "contrary and conflicting inferences" must be rejected when reviewing finding of reckless indifference to human life for substantial evidence]; cf. *People v. Myles* (2023)

---

**4**  We note that a reasonable fact finder could have discounted defendant's self-serving statement that she was unaware McCormick brought a shotgun, as this claim strains credulity.  But given that the trial court appeared to accept defendant's statement, we do not address this in our analysis.

89 Cal.App.5th 711, 740 ["for purposes of substantial evidence review, we are not permitted to draw inferences contrary to the verdict"].)

While acknowledging that she did not intervene in the murders or abandon the robbery, defendant submits she was powerless to do so given that her accomplices were armed. As noted, there is conflicting evidence as to when defendant first learned McCormick had a shotgun. Defendant initially told law enforcement, and now claims in her appellate briefing, that she did not know McCormick had the shotgun until after the first victim was killed. This would mean McCormick was unarmed when defendant drove up in the truck and discovered Forsyth tied up. If this was the case, defendant could easily have abandoned the robbery plan in its early stages, as she was driving the vehicle and her accomplices were unarmed. But she chose not to. Instead, she continued participating in a robbery that ultimately resulted in two deaths. Alternatively, if McCormick was already wielding a shotgun when defendant discovered Forsyth tied up, her statement that Forsyth could identify her was even more reckless. And defendant would then have been aware early in the robbery (prior to either murder) that her accomplice was armed, but still continued to participate in the robbery. Either scenario gives rise to inferences that support finding defendant was a major participant who acted with reckless indifference to human life.

The evidence here is in stark contrast to that in *Clark*, *supra*, 63 Cal.4th 522. There, the defendant's accomplice killed a person during the robbery of a computer store. (*Id*. at pp. 536-538.) Our Supreme Court concluded there was insufficient evidence to support the inference that the defendant was recklessly indifferent to human life. (*Id*. at p. 623.) But in that case, unlike here: (1) there was no evidence the shooter "was known to have a propensity for violence, let alone evidence indicating that [the] defendant was aware of such a propensity" (*id*. at p. 621); (2) the "defendant was not in the immediate area" where the shooting occurred because he was "orchestrating the second wave of the burglary" (*id*. at p. 614); (3) the defendant knew help was on the way for the victim (*id*. at

11

p. 620); and (4) the defendant abandoned the shooter by driving off without him, leaving him to be apprehended by police (*id*. at pp. 536-537, 613).

Having found that substantial evidence supports the trial court's conclusion, we reject defendant's challenge.

DISPOSITION

The postjudgment order denying defendant's section 1172.6 petition is affirmed.


                                                                     _____/s/_____
                                                                     Duarte, J.

We concur:


_____/s/_____
Earl, P. J.


_____/s/_____
Wiseman, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.